UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN LABORERS' HEALTH CARE
FUND, TRUSTEES OF, et al.,

      Plaintiffs,

v.

HER CONSTRUCTION, LLC, *a Michigan limited liability company*, and Phyllis Loudermill Watson, *an individual*,

      Defendants.
_____/

File No. 1:12-CV-307

HON. ROBERT HOLMES BELL

## **O P I N I O N**

On March 28, 2012, Plaintiffs Trustees of Michigan Laborers' Health Care Fund, Trustees of Michigan Laborers' Pension Fund, Trustees of Michigan Laborers' Vacation Fund, Trustees of Michigan Laborers' Training Fund, and Trustees of Michigan Laborers'-Employers' Cooperation and Education Trust Fund (collectively, the "Funds") brought a suit against Her Construction, LLC and Phyllis Loudermill Watson for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and Section 301(a) of the Labor Management Relation Act ("LMRA"), 29 U.S.C. § 185(a). (Dkt. No. 1.) On October 31, 2012, the Court entered default against Defendants for their willful failure to comply with discovery and the Court's orders. (Dkt. No. 26.) This order of default provided that Defendants had until November 30, 2012, to move to set aside the default

through a sworn showing that they had complied with all outstanding discovery and disclosure obligations. (*Id.*) It further permitted Plaintiffs to move for default judgment if the default was not set aside. Defendants have not moved to set aside the default, and the time for doing so has long passed. This matter is before the Court on Plaintiffs' motion for default judgment. (Dkt. No. 27.) Defendants have not filed a response to this motion and by all indications have stopped defending this case. Also before the Court is Plaintiffs' proposed order. (Dkt. No. 31.)

**I. Findings of Fact**

"On a motion for entry of default judgment pursuant to Rule 55(b)(2), allegations of fact in the complaint are taken as true unless they are contradictory on the face of the document." *Kelley v. Carr*, 567 F. Supp. 831, 840 (W.D. Mich. 1983) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)); *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) ("Once a default is entered against a defendant, that party is deemed to have admitted all the well pleaded allegations in the Complaint.").

Accordingly, the Court finds the following background facts: Watson is a member, owner, and resident agent of Her Construction (Dkt. No. 1, Compl. ¶ 5); Her Construction was bound to collective bargaining agreements ("CBAs") from December 2010 until July 2011 (*Id.* ¶ 6); Her Construction was required to remit benefit contributions, at the hourly rate established for each Fund, for all hours of covered work performed by its employees (*Id.* ¶ 8); under the terms of the CBAs, Her Construction was required to submit a Contribution

Reporting Form ("CRF") for each month showing the hours of covered work performed by its employees for the work month and the benefit contributions owed to the Funds based on those hours (*Id.* ¶ 9); Her Construction was required to promptly furnish to Plaintiffs all records concerning the classifications of its workers, the names and social security numbers of its workers, the amount of wages paid to and hours worked by its workers, location of work, and any other payroll records and information which were required in connection with the administration of the Funds and to ensure that the appropriate benefit contributions and other amounts were recorded and collected (*Id.* ¶ 10).

The Court also finds the following operative facts: Her Construction became indebted to Plaintiffs for the payment of benefit contributions, interest, and liquidated damages pursuant to the terms of the CBAs (*Id.* ¶ 12); Plaintiffs' audit of Her Construction showed that Her Construction owed $29,404.75 in benefit contributions and interest/assessments for the Audit Period, consisting of $26,496.82 in benefit contributions and $2,907.93 in interest/assessments. (*Id.* ¶ 13); a partial payment of $1,506.13 was made towards the amounts owed for the Audit Period, and the balance owed for the Audit Period according to the original audit is $27,898.62 (*Id.*); the actual balance owed for the Audit Period (after excluding a small number of hours in the original results which were not covered by the CBAs) is $24,230.42 (Dkt. No. 27, at PageID#242; Dkt. No. 27, Ex. A, Mills Decl. ¶¶ 13-16; Dkt. No. 28, Ex. H, Audit Revised Billing.); in operating Her Construction, Watson has, among other things: (a) failed to follow business formalities, (b) failed to adequately

capitalize the business which has caused a failure to remit benefit contributions, (c) commingled personal and business assets, and (d) committed fraud by taking monies from the business while failing to pay benefit contributions (Compl. ¶ 14); Watson is responsible for decisions regarding the payment of Her Construction's expenses, including decisions about whether to pay benefit contributions owed to the Funds (*Id.* ¶ 25).

**II. Conclusions of Law**

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2688. "[B]efore granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit mere conclusions of law.'" *Cunningham v. MEC Enter., Inc.*, No. 10-13409, 2012 WL 1094330, at *3 (E.D. Mich. Mar. 2, 2012) (quoting *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008)).

Before addressing each count in the Complaint, the Court must first address the complaint's attempt to hold Watson jointly and severally liable for Her Construction's violations of ERISA and the LMRA. "Generally, a corporation is considered an entity separate and distinct from its owners or shareholders." *Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 733 (6th Cir. 2003). "Corporate officers and shareholders do not fall within ERISA's definition of 'employer,' and thus cannot be held personally liable for a

corporation's ERISA obligations by virtue of their relationship to the corporate employer alone." *Id.* at 734. However, according to the Sixth Circuit:

> [T]he corporate veil may be pierced if the court finds "substantial reasons for doing so" after considering three general factors: (1) "the amount of respect given to the separate identity of the corporation by its shareholders;" (2) "the degree of injustice visited on the litigants by recognition of the corporate entity," and (3) "the fraudulent intent of the incorporators."

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005). In analyzing these factors, the Court should consider the undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. *Id.* at 302-03 (citing *Laborers' Pension Trust Fund v. Sidney Weinberger Homes*, 872 F.2d 702, 704-05 (6th Cir. 1988)).

All of these *Aguirre* factors have been satisfied pursuant to paragraph 14 of Plaintiffs' complaint and this Court's findings of fact. Consequently, the Court concludes that little respect was given to the separate identify of the corporation by Watson, injustice would be visited on Plaintiffs by recognizing the corporate entity, and that Watson possessed fraudulent intent. Because substantial reasons exist for piercing the corporate veil, the Court concludes that Watson will be held jointly and severally liable with Her Construction.

### A. Count I - Violation of ERISA

According to ERISA:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA further provides that a fiduciary may bring an action to enforce § 1145 and recover the unpaid contributions, interest on the unpaid contributions, an additional amount equal to the greater of such interest or liquidated damages provided for under the plan, reasonable attorney's fees and costs, and such other legal or equitable relief the Court deems appropriate. 29 U.S.C. § 1132(g)(2)(A)-(E). "Trustees of an ERISA fund may enforce the CBA with the employer as third party beneficiaries." *Trs. for Mich. BAC Health Care Fund v. OCP Contractors, Inc.*, 136 F. App'x 849, 851 n.2 (6th Cir. 2005) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460 (6th Cir. 1989)).

The Court has found that Her Construction owes $24,230.42 for unpaid benefit contributions owed for the Audit Period. (*See* Compl. ¶ 13; Mills Decl. ¶¶ 13-16; Audit Revised Billing.) Consequently, the Court concludes that Her Construction has violated 29 U.S.C. § 1145 by not paying benefit contribution obligations and is liable to Plaintiffs (jointly and severally with Watson) under 29 U.S.C. § 1132(g)(2) for $21,695.73 in benefit contributions, $1,000.67 in interest, $1,000.67 in liquidated damages, and $694.39 in audit costs. The Court also concludes that Defendants are liable for Plaintiffs' legal fees. *See* § 1132(g)(2)(E).

**B. Count II - Violation of the LMRA**

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). As discussed, Her construction has breached the CBAs by failing to pay benefit contributions and other amounts owed to the Funds. Thus, pursuant to the LMRA, Her Construction is liable (jointly and severally with Watson) for the $21,695.73 in unpaid benefit contributions. Because the $1,000.67 in interest, $1,000.67 in liquidated damages, and $694.39 in audit costs were calculated under Plaintiffs' collection policies, which were incorporated into the CBAs by reference,[1] the Court concludes that Her Construction and Watson are also liable for these amounts under the LMRA.

**C. Count III - Breach of Fiduciary Duties**

"[A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The Court has found that Watson exercised control over the payment

---

[1] "[T]he contractor specifically agrees to be bound by . . . any . . . rules, regulation, or other requirements relating to the Funds adopted by the Trustees." (Dkt. No. 27, Ex. B, 2007-2010 and 2010-2011 CBAs, Art. III.). The Michigan Laborers' Joint Delinquency Committee Collection Policy provides that a delinquent employer must pay unpaid benefit contributions, 8% interest, 8% liquidated damages, and audit costs. (Dkt. No. 27, Ex. C § F.)

7

of benefit contributions owed to the Funds, thus it concludes she is a fiduciary. The Court concludes that Watson used Fund assets for the benefit of Her Construction and failed to discharge her duties with respect to those assets solely in the interest of participants and beneficiaries in violation of 29 U.S.C. §§ 1103(c)(1) and 1104(a)(1). Thus, Watson is liable to Plaintiffs "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary." 29 U.S.C. § 1109(a). As discussed, the losses are equivalent to $24,230.42.

**III. Damages**

As stated, Plaintiffs are entitled to $24,230.42 in compensatory damages under Counts I-III. However, Plaintiffs also seek attorneys fees and additional equitable relief.

**A. Attorneys Fees**

In any action under ERISA by "a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D); *see also Trs. of BAC Local 32 Insur. Fund v. Fantin Enters., Inc.*, 163 F.3d 965, 970 (6th Cir. 1998). "[W]e also adopt the rule that in ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). A judgment in favor of the ERISA plans under § 1145 has been awarded, and thus the Funds are entitled to reasonable attorneys fees.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006).  The party seeking attorneys fees pursuant to this "lodestar" calculation bears the burden of documenting his entitlement to the award with "evidence supporting the hours worked and rates claimed." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting *Hensley*, 461 U.S. at 433).

Plaintiffs' attorneys charged an hourly rate of $185 for attorney time and $120 for legal assistant time.  (*See* Dkt. No. 29, Ex. K ¶ 5.)  The Court finds that these rates are reasonable.  According to a 2010 State Bar of Michigan survey, the median billing rate was (a) $215 for all attorneys, (b) $228 for attorneys with 16 to 25 years experience, (c) and $250 for attorneys in South Oakland County. (Dkt. No. 29, Ex. M, at 7, 9.)  Plaintiffs' attorney, Michael J. Bommarito, has nearly 30 years of experience, and thus $185, which is below the market rate, is reasonable for Bommarito.  (*Id.* ¶ 3.)  Plaintiffs also submitted an excerpt from a 2003 State Bar of Michigan survey to show that the median billing rate of legal assistants in South Oakland County with 10 years of experience was $93 in 2003.  (Dkt. No. 29, Ex. N.)  The excerpt Plaintiffs submitted does not contain this information.  Nevertheless, this information is provided on the previous page of the 2003 survey.[2]  While the $120 rate requested is substantially higher than the median rate, that rate is from nine years ago and

---

[2] *See* State Bar of Michigan, Economics of Law Practice 26 (2003), *available at* www.michbar.org/pmrc/articles/0000133.pdf.

9

Plaintiffs' legal assistant, Dennis Flynn, has over 25 years of experience as opposed to ten. (Ex. K, ¶ 4.)  Thus, the Court accepts the $120 rate for Flynn's time.

The Court has reviewed the hours submitted by Plaintiffs in detail.  (*See* Dkt. No. 29, Ex. L.)  It concludes that these hours are reasonable and that there was no unnecessary, excessive, or duplicative billing.  The majority of these hours were undertaken by Bommarito and Flynn.  However, there are a small number of hours (3.25 in total) billed by another attorney, "SMI," at $185 per hour, another legal assistant, "ZA," at $120 per hour, and a law clerk, "Stephanie Austin," at $120.  Plaintiffs have submitted no information to the Court regarding the experience of SMI, ZA, or Austin.  The Court will accept the $185 rate for SMI because that rate is significantly less than the median billing rate for attorneys in South Oakland County.  However, the Court will not accept the $120 rate for ZA and Austin because that rate is higher than the median rate for legal assistants and law clerks with ten years of experience and Plaintiffs have failed to apprise the Court of any evidence justifying this rate for ZA and Austin. Consequently, the Court will award $70 per hour for their time, which was the 2003 median rate for legal assistants in South Oakland County without experience.  While the Court is aware that this median rate was likely higher in 2012 and that ZA and Austin may have experience justifying a higher rate, the Court does not have access to either the 2012 median rates or the nature of ZA and Austin's experience, and the burden was on Plaintiffs to provide evidence supporting the rates claimed.  *See Reed*, 179 F.3d at

472. Consequently, the Court will award $16,783.75 in total attorneys fees.[3]

Plaintiffs also request $575.91 in costs. This request includes reproduction expenses, the filing fee, the mediation fee, telephone expenses, postage expenses, and process server fees. The Court finds that these costs are reasonable. *See Gradisher v. Check Enforcement Unit, Inc.*, No. 1:00-CV-40, 2003 WL 187416, at *8 (W.D. Mich. Jan. 22, 2003) (Quist, J.) ("Courts have found that expenses ordinarily charged to clients include photocopying, travel, telephone costs, postage, and computer-assisted legal research.").

Thus, in sum, the Court will award Plaintiffs $17,359.66 in fees and costs.

**B. Equitable Relief**

Plaintiffs' motion asks the Court to compel Her Construction to submit accurate CRFs and/or benefit contributions for the post-July 2011 period and to compel Her Construction to submit to an audit. This relief falls outside the scope of Plaintiffs' complaint. While Plaintiffs' complaint includes a request for "such other legal and equitable relief as the Court deems just," the terms of liability for each count were limited to conduct occurring during the "Audit Period." The Audit Period is defined in the complaint as "the period of December 2010 through July 17, 2011." (Compl. ¶ 13.) Nowhere in Plaintiffs' complaint is there a factual allegation regarding Defendants's actions *after* July 2011. The Court will not award relief in a default judgment for conduct that was not pleaded in the complaint. *See Ford Motor Co.*, 441 F. Supp. 2d at 846.

---

[3]This figure equals the $16,933.75 requested by Plaintiffs minus $125 of overcharging for ZA's time and minus $25 of overcharging for Austin's time.

11

**IV. Conclusion**

The Court will enter default judgment in favor of Plaintiffs on all three counts of their complaint. Defendants will be held jointly and severally liable for $24,230.42 in compensatory damages and $17,359.66 in fees and costs, for a total award of $41,590.08. Plaintiffs' request for additional equitable relief will be denied.

An order consistent with this opinion will be entered.


Dated: February 15, 2013    /s/ Robert Holmes Bell
                            ROBERT HOLMES BELL
                            UNITED STATES DISTRICT JUDGE